UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>APPROXIMATELY $73,670 IN UNITED STATES CURRENCY,<br><br>    Defendant. | Case No.:13-cv-01799-JCS<br><br>**ORDER GRANTING THE UNITED STATES' MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 15 |

## I.  INTRODUCTION

This is an *in rem* action brought under 18 U.S.C. § 981(a)(1)(C) involving the seizure of Defendant approximately $73,670.00 in United States currency.  The Clerk has entered default, and the United States now brings a Motion for Default Judgment ("Motion") by the Court.  No opposition was filed.  The Motion came on for hearing on Friday, September 6, 2013 at 1:30 p.m.  At the hearing, the Court asked the United States to provide additional materials.  The United States submitted some of the requested additional materials on September 13, 2013 but did not address all of the Court's questions.  Accordingly, on September 24, 2013, the Court issued an order for additional briefing and evidence. The United States submitted the requested materials and briefing on October 10, 2013.   For the reasons stated below, the Court GRANTS Plaintiff's Motion.[1]

---

[1] The United States has consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 686(c).  *See* Dkt. No. 6.  No other party or claimant appeared.  Further, in an *in rem* forfeiture proceeding, a potential claimant who fails to comply with the applicable filing requirements is precluded from standing as a "party" to the action, making it unnecessary to obtain the individual's consent to proceed before a magistrate judge.  *United States v. 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1317 (9th Cir. 1998).  Therefore, the undersigned magistrate judge may enter judgment in this case.

## II. BACKGROUND

### A. The Complaint

In the Complaint, the United States alleges that on or about October 15, 2012, L.G. ("Victim 1") received a letter indicating that she won a $650,000.00 cash prize from the Publisher's Clearing House. Complaint ¶ 9. Victim 1 is 84 years old and resides in Wisconsin. *Id.*

It is further alleged that on or about October 18, 2012, Victim 1 followed the instructions in the letter and called Don Beckett, the individual purportedly "handling her case." *Id.* ¶ 10. Beckett informed Victim 1 that part of the prize was to have her credit card balance paid off. *Id.* Shortly thereafter, Victim 1 confirmed that the $800.00 balance on her credit card had been paid off. *Id.* Then, Beckett contacted Victim 1 and told her to send him $10,000.00 to cover attorney and insurance fees for the prize. *Id.* Beckett instructed Victim 1 to place the bills in the middle of a magazine and to seal the edges with tape. *Id.* Further, Beckett told her to send the package to Evelyn Nguyen,[2] 1680 Shore Place #7, Santa Clara, California, 95054. *Id.* Victim 1 withdrew $10,000.00 in $100 bills from her savings account and followed Beckett's shipping instructions. *Id.*

On or about October 19, 2012, Plaintiff alleges, Beckett called Victim 1 and informed her that he had received the $10,000.00. *Id.* ¶ 11. Beckett told Victim 1 to send another $10,000.00 for traveling costs, plane fares, and courier fees. *Id.* Victim 1 told Beckett that she only had $5,000.00 to send. *Id.* Following this conversation, Victim 1 withdrew $5,000.00 in $100 denominations, followed the same mailing instructions, and sent the package to Evelyn Nguyen, 1680 Shore Place #7, Santa Clara, California, 95054. *Id.* After sending the second package, Victim 1 realized that she had been scammed. *Id.* ¶ 12. But Victim 1 was unable to cancel her second shipment because it had already arrived in California. *Id.*

On or about October 16, 2012, H.K. ("Victim 2") allegedly received a flyer in the mail indicating that she won the Publisher's Clearing House. *Id.* ¶ 13. Victim 2 is 83 years old and

---

[2] "Evelyn Nguyen" is spelled three different ways in the Complaint: "Evelyn Nguyen," "Eva Newen," and "Evalynn Nuyen." The Court uses "Evelyn Nguyen" in this Order.

resides in Wisconsin. *Id.* Victim 2 spoke with Don Beckett over the phone. *Id.* ¶ 14. Beckett told Victim 2 that part of the prize was to have her credit card balance paid off. *Id.* Victim 2 gave Beckett her credit card information and then Victim 2 confirmed that the $150.00 balance on her credit card had been paid off. *Id.* Shortly thereafter, Victim 2 went to U.S. Bank in Wisconsin and withdrew $15,000.00 in cash. *Id.* ¶ 15. She left the paper bands on the cash. *Id.* Per Beckett's instructions, Victim 2 placed the money in the center of a magazine and sent the money via FedEx to Evelyn Nguyen at 3003 Olin Avenue, San Jose, California. *Id.*

The United States alleges that a few days later, Victim 2 received a phone call from Beckett advising her to send another $15,000.00 for expenses and taxes. *Id*. ¶ 15. Beckett instructed Victim 2 to send the package with the money to an address in Mississippi. *Id.*

Plaintiff further alleges that on October 22, 2012, Victim 2 withdrew $15,000.00 from her bank account. *Id*. ¶ 16. She packaged it the same way as the first $15,000.00. *Id.* Later that day, the Santa Clara Police contacted Victim 2 to inform her of the scam. *Id.* Victim 2 was able to cancel the package before it was mailed. *Id.*

On or about October 20, 2012, it is alleged, the Santa Clara Police Department initiated an investigation regarding an advance fee fraud scheme that originated in Wisconsin. *Id*. ¶ 8. On October 20, 2012, the Santa Clara Police Department dispatched detectives to 1680 Shore Place, Santa Clara. *Id.* ¶ 17. The officers located the package sent by Victim 1 on the front porch of 1680 Shore Place and verified the package by matching the name, description of the package, and the FedEx tracking number. *Id.* The officers opened the package. *Id.* They discovered that it contained $5,000.00 in cash, wrapped in a magazine. *Id.* Shortly thereafter, the officers observed an Asian male, later identified as Peter Huynh[3] drive up to the apartment. *Id.* He appeared to be searching for something and then proceeded to make a phone call. *Id.* Detectives made contact with Huynh. *Id.* Huynh stated he was picking up a FedEx package for his roommate, Jason Nguyen. *Id.* Huynh agreed to go to the police station for further questioning. *Id.*

At the police station, Huynh allegedly stated he was picking up a FedEx package at 1680

---

[3] The Complaint refers to Huynh as "Jason Huynh" at one point. The Court uses "Peter Huynh" in this Order.

Shore Place and was going to bring it to Evelyn Nguyen, the sister of Jason Nguyen. *Id*. ¶ 18. Huynh said Jason Nguyen had offered to pay him $100.00 for picking up the package. *Id.* Further, Huynh stated he picked up another package at the Shore Place address for Jason Nguyen on October 19, 2012. *Id.* He stated that he delivered the package to Evelyn Nguyen at her business at the Valley Fair Shopping Mall in San Jose, California. *Id.* Huynh stated he did not know the contents of the package. *Id.*

The United States alleges that during the interview, Huynh received numerous phone calls from Jason Nguyen. Compl. ¶ 19. The detectives arranged to have Huynh answer the phone and place the call on speaker so the conversation could be recorded. *Id.* Jason Nguyen instructed Huynh to bring the package to the apartment of his sister, Evelyn Nguyen, located at 3003 Olin Avenue, San Jose, California, where Jason Nguyen was to meet Huynh. *Id.*

The detectives allegedly removed the $5,000.00 from the magazine in the FedEx envelope and placed the magazine only in the FedEx envelope for Huynh to deliver to Jason Nguyen. *Id*. ¶ 21. Huynh met Jason Nguyen in the parking lot adjacent to 3003 Olin Avenue. *Id.* Jason Nguyen was subsequently arrested as he approached Huynh to retrieve the package. *Id.*

During his interview, Plaintiff alleges, Jason Nguyen stated that he worked at 3003 Olin Avenue Apartment #306 as a graphic designer for a business owned by Daniel Ni. Compl. ¶ 22. He stated that Ni is the boyfriend of his sister, Evelyn. *Id.* Jason Nguyen further stated that Ni and Evelyn reside in the Olin Avenue apartment. *Id.* Jason Nguyen explained to the detectives that he became involved in the fee scam shortly after an arrest in 2011, in order to pay his court fees. *Id.* ¶ 23. He explained that the scam entails mailing a letter to a victim advising that the individual has won the "Sweepstakes Clearing House." *Id.* Victims are instructed to send money to a designated name and address to collect the winnings. *Id.* Jason Nguyen usually picked up the packages himself and delivered them to his sister, Evelyn. *Id.* But he asked Huynh to pick up the last two packages because Jason Nguyen had to work. *Id.*

The United States alleges that on the same day, October 20, 2012, detectives made contact with Evelyn Nguyen at the Panda Hats Kiosk at the Valley Fair Mall in San Jose, California. *Id*. ¶ 24. Evelyn Nguyen admitted she received a package from Huynh on October 19, 2012. *Id.* The

4

detectives told Evelyn Nguyen that they wanted to return the packages to the victims. *Id.* Evelyn Nguyen responded "if they come here in person, I will give it to them." *Id.* The detectives subsequently arrested Evelyn Nguyen and transported her to the police station. *Id.*

Plaintiff alleges that on October 21, 2012, detectives executed a state search warrant at 3003 Olin Avenue #306, San Jose, California. *Id*. ¶ 26. During the search, the detectives located large stacks of money, allegedly totaling approximately $83,770.00, in several areas of the apartment. *Id.* In particular, the detectives found a hat box in the bedroom closet, which allegedly contained approximately $56,670.00 in United States currency in mainly $100, $50, and $20 denominations. *Id*. ¶ 27. The detectives allegedly found four bundles of cash, which amounted to $15,000.00, in the top left-hand dresser drawer in the bedroom. *Id.* ¶ 28. The money was wrapped in currency bands which appeared to be bank-specific indicia. *Id.* There was one $10,000.00 band, two $2,000.00 bands, and one $1,000.00 band. *Id.* The $10,000.00 and $2,000.00 bundles were in $100 bills. *Id.* The $1,000.00 band was in $50 bills. *Id.* The currency bands indicated they were from U.S. Bank Teller 0011, branch 1220, with tracking #075000022. *Id.* The tracking number belonged to a U.S. Bank in Sheboygan, Wisconsin. *Id.* Detectives allegedly contacted U.S. Bank and learned that Victim 2 had withdrawn $15,000.00 on October 16, 2012 and an additional $15,000.00 on October 22, 2012. *Id.* The detectives also allegedly found $2,000.00 in $20 bills in the top left hand dresser in the bedroom, inside an Office Depot bag. *Id.* ¶ 29. Further, $10,000.00 in $100 bills was found in the top drawer of the night stand next to the window. *Id.* ¶ 30. It is alleged that "indicia" belonging to both Evelyn Nguyen and Daniel Ni were also found inside the apartment. *Id.* ¶ 31.

### B. Claims for Relief

The United States brings this action under 18 U.S.C. § 981(a)(1)(C), which provides, in relevant part, for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7). Under § 1956(c)(7), "specified unlawful activity" includes any act or activity constituting an offense listed in 18 U.S.C. § 1961, which in turn includes violations of §§ 1341 and 1343. In Claim One, Plaintiff seeks forfeiture of $73,670.00 in United States Currency based

on § 1341 ("the Mail Fraud Claim"). In Claim Two, Plaintiff seeks forfeiture of the $73,670.00 in United States Currency based on § 1343 ("the Wire Fraud Claim").

### C.     Procedural Background

The United States filed the Complaint for Forfeiture on April 19, 2013, naming "Approximately $73,670 in United States Currency" as Defendant. Compl. ¶ 6. On April 22, 2013, the United States gave notice of this action directly to Daniel Ni, Evelyn Nguyen, and her attorney Alan Lagod by serving, via both certified and regular U.S. mail, a copy of the Complaint for Forfeiture, Warrant of Arrest of Property *In Rem*, Notice of Forfeiture Action, ECF Registration Handout, Civil Standing Order for Magistrate Judge Joseph C. Spero, and Booklet Entitled "Dispute Resolution Procedures in the Northern District of California" to their last known addresses. *See* Dkt. No. 5 (Certificate of Service); *see also* Dkt. No. 2 (Public Notice of Forfeiture Action); Dkt. No. 3 (Warrant of Arrest of Property *In Rem*). The United States also published notice of this forfeiture action on an official government website (www.forfeiture.gov) for at least 30 consecutive days, beginning on April 24, 2013. *See* Dkt. No. 7 (Declaration of Publication).

As discussed below, the deadline to file a claim asserting an interest in defendant currency was 60 days from the first day of publication – April 24, 2013. No one filed a claim.[4] On July 22, 2013, the United States moved for a Clerk's Entry of Default under Federal Rule of Civil Procedure 55(a) on the ground that proper notice had been given and no timely claim had been filed. *See* Dkt. No. 9. The Clerk entered default on July 24, 2013. *See* Dkt. No. 11.

On July 29, 2013, Plaintiff filed this Motion seeking entry of default judgment by the Court against Defendant $73,670.00 in United States Currency, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and Admiralty Local Rule 6-2. *See* Dkt. No. 13.

A hearing on the Motion was held on September 6, 2013 at 1:30 p.m. *See* Dkt. No. 18 (Civil Minutes). At the hearing, the Court requested that the United States submit a further

---

[4] Approximately one week after the Case Management Conference on July 26, 2013, Assistant United States Attorney Kimberly Hopkins received a phone call from an attorney stating that he was considering coming into the case for potential claimant Daniel Ni. Hopkins Decl. n. 2. As of the date of her declaration, September 13, 2013, Ms. Hopkins had not heard back from the attorney, and no one had filed a claim for Defendant currency.

declaration explaining how the amount of $73,670 was reached, given that it was not the same as the amount allegedly seized. *Id.* Also, the Court asked the United States to address whether it was required to give notice to the victims as potential claimants. *Id.*

On September 13, 2013, Plaintiff filed the Declaration of Kimberly Hopkins in Support of Request for Entry of Default Judgment. *See* Dkt. No. 19 ("Hopkins Decl."). The Hopkins declaration explains that due to transcription errors, the amount of currency that is alleged in the complaint to have been seized is incorrect:

> A total of $89,756 was seized in connection with the investigation: $5,000 was seized from a package intercepted by officers at 1680 Shore Place in Santa Clara; $83,800 was seized during the execution of a search warrant at 3003 Olin Avenue, #404 in San Jose; $430 was seized from Evelyn Nguyen's purse subsequent to her arrest; and $526 was seized from Jason Nguyen's person subsequent to his arrest. Pursuant to the Court's Order, and upon further investigation, the undersigned learned from the case agent that the Search Warrant Return detailing the amounts seized during the execution of the search warrant at 3003 Olin Avenue had two transcription errors. The government relied upon this document when drafting the Complaint. Paragraph 27 of the Complaint incorrectly states that $56,670 was seized from the hat box. Rather, $56,770 was seized from the hat box. Paragraph 29 of the Complaint incorrectly states that $2,000 in $20 bills was found in the top left hand dresser drawer. Rather, $2,030 was found in the top left hand dresser drawer. Therefore, paragraph 26 of the Complaint should state that the total amount seized during the execution of the search warrant was approximately $83,800.

Hopkins Decl., ¶ 4.

The Hopkins Declaration further explains that the United Sates is seeking judicial forfeiture of $73,670 rather than the full amount seized, because this is the amount sought by Daniel Ni, who filed an administrative claim for $73,670 of the forfeited currency even though he has not appeared in this action. Hopkins Declaration ¶ 6. The difference between the amount seized and the amount claimed by Ni – $16,086 – has been divided between the two victims, minus the administrative costs incurred by the United States (a total of $238.00, also divided evenly between the two victims). *Id*. ¶¶ 5-8. Thus, each of the victims has received $7,923.90 to date. *Id*. ¶ 8. The administrative process by which the victims have received a portion of the money they lost is described as follows.

> 5. Two victims identified in the case, L.D. and H.K., and Evelyn

7

> Nguyen were provided notice of administrative forfeiture proceedings as to the $89,756 in currency. The Notice gave the victims the option of doing nothing, submitting an administrative claim contesting forfeiture (which would have resulted in referral to the United States Attorney's Office for judicial forfeiture), or submitting a petition for remission. On December 31, 2012, L.D. filed a Petition for Remission in the amount of $15,000. On January 7, 2012,[5] H.K. filed a Petition for Remission in the amount of $15,000. The victims' affirmative choice to seek remission indicated their decision not to contest the forfeiture.
>
> 6. On January 22, 2013, Daniel Ni submitted an administrative claim contesting forfeiture, and claimed an interest in $73,670 of the $89,756 in currency seized. Because Ni filed a claim for a portion of the total amount of currency seized, the remaining amount, $16,086, was subject to administrative forfeiture proceedings.
>
> 7. On March 8, 2013, the $16,086 was administratively forfeited.
>
> 8. On March 19, 2013, the United States Secret Service ("USSS"), Office of Chief Counsel, approved the victims' Petitions for Remission and the victims were each paid $7,923.90. The victims' payments were taken from the amount administratively forfeited ($16,086), minus agency administrative costs (approximately $238.20). . . . **The government anticipates that the victims will receive the remaining loss amount claimed in their Petitions for Remission once the case is resolved.**

*Id*. (emphasis added). According to Hopkins, the administrative costs "include advertising and packaging expenses incurred by USSS." *Id*. n. 1.

On October 10, 2013, in response to the Court's order for additional materials, the United States filed: 1) a copy of the Notice of Forfeiture Action that the Court had previously requested; 2) the Notice of Administrative Forfeiture sent to the victims; 3) the Petitions for Remission filed by the Victims; and 4) the letter from the USSS granting the victim's petitions for remission. See Docket No. 22. The United States also filed a brief addressing whether the actions of the victims in the administrative forfeiture proceeding excused the United States from the notice requirements for judicial forfeitures that would otherwise have required it to give notice of this action to the victims. *Id*. In its brief, the United States argues that while the Ninth Circuit held in *United States v. Boylan*, 392 F.3d 1002 (9th Cir. 2004) that victims should be given notice of forfeiture actions, that case is distinguishable because there had been no administrative forfeiture proceeding and the

---

[5] It is apparent from context that H.K.'s petition was filed on January 7, 2013 and not on January 7, 2012, as stated in the declaration, and that this is merely a typographical error.

government had not only failed to give notice to the victims but had moved for default judgment even though it had been advised that some of the victims intended to file claims to contest the forfeiture.  *Id*.

### III. ANALYSIS

#### A. Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), which vest district courts with original jurisdiction in "any action or proceeding for the . . . enforcement of any . . . forfeiture . . . incurred under any Act of Congress."  *See* 28 U.S.C. § 1355(a).

#### B. Legal Standard

Forfeiture is "harsh and oppressive" and thus, is "not favored by the courts."  *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994) (citations omitted).  The Ninth Circuit is "particularly wary of civil forfeiture statutes" because they "impose 'quasi-criminal penalties" but do not provide property owners with the degree of procedural protection provided to criminal defendants.  *Id.* at 1068.  Accordingly, strict adherence to procedural rules is paramount in civil forfeiture proceedings.  *See United States v. Marolf*, 173 F.3d at 1217 (9th Cir. 1999) (denying forfeiture where the government "erred" by failing to provide due notice to property owner); *$191,910.00 in U.S. Currency*, 16 F.3d at 1068-69 (strictly construing currency forfeiture provisions of 19 U.S.C. § 615 against the government and holding that "the burden on the government to adhere to procedural rules should be heavier than on claimants.") (quoting *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1547 (11th Cir. 1987)).  The procedures governing civil forfeiture actions are set forth in the various specific forfeiture statutes, the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"), and this district's Admiralty Local Rules.

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a district court may enter default judgment where the clerk, under Rule 55(a), has previously entered the party's default based on a failure to plead or otherwise defend an action.  Fed. R. Civ. P. 55(b); *see PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).  Once a party's

default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. Fed. R. Civ. P. 8(b)(6); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (citations omitted). Granting or denying a motion for default judgment is a matter within the court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

Here, default was entered by the Clerk on July 24, 2013. *See* Dkt. No. 11. Consequently, the factual allegations of Plaintiff's complaint are deemed to be true and the Court is vested with the authority to enter default judgment. The decision whether to exercise its discretion is guided by two overlapping inquiries. First, the Court considers Plaintiff's claims in light of the factors set forth by the Ninth Circuit in *Eitel*, 782 F.2d at 1471-72. Second, the Court determines whether Plaintiff has met the specific procedural requirements governing forfeiture actions.

### C. Application of the *Eitel* Factors

In *Eitel*, the Ninth Circuit set forth the following factors to be considered in determining whether entry of default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d 1470, 1471-72 (9th Cir. 1986). The first factor supports granting default judgment because denying the Motion would likely prejudice the United States by leaving it without a remedy. The sum of money at stake ($73,670.00), though substantial, is not so large as to warrant denial of the Motion. As discussed further below, Daniel Ni, Evelyn Nguyen, and her attorney were properly served with the Complaint, Arrest Warrant, and Notice of Forfeiture Action at their last known addresses. Thus, there is no indication of a possibility of dispute concerning material facts or that the default was due to excusable neglect. Further, although the federal courts prefer

to decide cases on their merits when "reasonably possible," *Eitel*, 782 F.2d at 1472, this preference is not dispositive. *See Kloepping v. Fireman's Fund*, No. C 94-2684, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). When a defendant fails to answer a plaintiff's complaint, a decision on the merits is "impractical, if not possible." *PepsiCo.*, 238 F. Supp. 2d at 1177. Therefore, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *Kloepping*, 1996 WL 75314, at *3.

Before entering default judgment, however, the Court must ensure that the allegations of the Plaintiff's complaint, which are assumed to be true, are sufficient to warrant forfeiture of the Defendant property under the relevant statutes. As discussed above, Plaintiff seeks forfeiture of currency pursuant to 18 U.S.C. § 981(a)(1)(C) on the basis that the $73,670.00 constitute proceeds from mail and wire fraud.

Plaintiff's Mail Fraud Claim is sufficiently alleged. Section 1341 makes it unlawful for any person to devise any scheme or artifice to defraud, or to obtain money or property by false or fraudulent pretenses, to send or cause to be sent by the Postal Service or any private or commercial interstate carrier for mail, any matter or thing for the purpose of executing the fraudulent scheme or artifice. 18 U.S.C. § 1341. In the present matter, it is alleged that Defendant $73,670.00 in United States currency is proceeds from one or more violations of § 1341. Compl. ¶ 34. Plaintiff's factual allegations reflect that mail was used to defraud both Victims 1 and 2. *See* Compl. ¶¶ 9 (Victim 1 received letter in mail regarding winning cash prize), 10 (Victim 1 mailed $10,000.00 to 1680 Shore Place); 11 (Victim 1 shipped $5,000.00 to 1680 Shore Place), 13 (Victim 2 received flyer in mail about winning Publisher's Clearing House), 15 (Victim 2 used FedEx to send $15,000.00 in cash to 3003 Olin Avenue). Accordingly, Plaintiff's forfeiture claim under § 1341 and thus § 981(a)(1)(C) is sufficiently alleged.

Plaintiff's Wire Fraud Claim is also sufficiently alleged. Section 1343 makes it unlawful for any person, "having devised . . . any scheme or artifice to defraud, or for obtaining money or property by false pretenses . . . to be transmitted by means of wire . . . for the purpose of executing such scheme or artifice . . . ." 18 U.S.C. § 1343. "Wire" under § 1343 includes the use of the telephone in the course of orchestrating a fraud scheme. *See United States v. Garner*, 663 F.2d

11

834, 838 (9th Cir. 1981) (internal quotation marks omitted) ("§ 1343 requires that the telephone call be made for the purpose of committing the unlawful activity."). The Complaint alleges that wire was used to defraud both Victims 1 and 2. *See* Compl. ¶¶ 9 (Victim 1 followed the instructions in the letter and called Don Beckett), 11 (Beckett called Victim 1 and told her that he received the $10,000.00), 15 (Victim 2 received another phone call from Beckett). Therefore, the Court finds that Plaintiff's forfeiture claim under § 1343 and § 981(a)(1)(C) is sufficient.

Consideration of the *Eitel* factors as a whole weighs in favor of granting the Motion for Default Judgment.

### D. Procedural Requirements for Forfeiture

Given the Court's finding that entry of default judgment is appropriate under *Eitel*, the Court must next determine whether Plaintiff has also satisfied the procedural requirements that govern civil forfeiture actions and entry of default judgment in such actions. The Court concludes that it has. Because this is an action *in rem* that is governed by the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules"), the Admiralty and Maritime Local Rules for the Northern District of California ("Admiralty Local Rules") govern. Admir. L.R. 1-2; *see 5145 N. Golden State Blvd.*, 135 F.3d at 1315 (holding that the Supplemental Rules govern judicial forfeitures of property).

Under Admiralty Local Rule 6-2(a), a party seeking a default judgment in an *in rem* action must make the following showing: (1) notice of the action and arrest of property has been given as required by Admiralty Local Rules 6-1(a)(1) and (b)(1), and (2) no one has filed timely and responsive pleadings pursuant to the requirements of Supplemental Rule G(5).

#### 1. Notice of Action and Arrest of Property

Under Admiralty and Maritime Local Rule 6-1(a), "[a] party seeking a default judgment in an action *in rem* must show that due notice of the action and arrest of the property has been given: . . . In actions subject to Fed. R. Civ. P. Supp. G: (i) Through execution of process in accordance with Fed. R. Civ. P. Supp. G(3); and  (ii) In accordance with Fed. R. Civ. P. Supp. G(4)." Admir. L.R. 6-1(a).

##### i. Supplemental Rule G(3)

12

Plaintiff has met the requirements set forth in Supplemental Rule G(3), which provides that "the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Fed. R. Civ. P. Supp. G(3)(b)(i). In this case, a Warrant of Arrest of Property *In Rem* was issued on April 19, 2013. *See* Dkt. No. 3. Thus, the Court finds that Plaintiff was in compliance with Supplemental Rule G(3).

### ii. Supplemental Rule G(4)

Supplemental Rule G(4) requires both notice by publication and notice to "any person who reasonably appears to be a potential claimant." Fed. R. Civ. P. Supp. G(4) (a) & (b). The United States has satisfied both requirements.

With respect to notice by publication, Rule G(4)(a) provides that "[a] judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders[,]" and requires that a published notice: "(A) describe the property with reasonable particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with the claim and answer." *Id.* at G(4)(a)(i)-(ii). Rule G(4) further provides that the notice may be published by "posting a notice on an official government forfeiture site for at least 30 consecutive days." *Id.* at G(4)(a)(iv).

To demonstrate compliance with the published notice requirement, the United States has filed a "Declaration of Publication," which states that the United States published notice of the action on an official government website (www.forfeiture.gov), where it remained for at least 30 consecutive days beginning on April 24, 2013. *See* Dkt. No. 7 (Declaration of Publication). The published notice described the property to be seized as: "$73,670.00.00 of $89,756.00 in U.S. Currency seized (13-USS-000096) which was seized from Evelyn Hang Nguyen on October 21, 2012 at 3003 Olin Avenue, Apt. 306, located in San Jose, CA[.]" *Id.* The published notice also stated that "[a]ny person claiming a legal interest in the Defendant Property must file a verified Claim with the court within 60 days from the first day of publication (April 24, 2013)," and named Assistant United States Attorney Kimberly Hopkins as the government attorney to be served. This notice complies with the requirements of Supplemental Rule G(4)(a).

Next, with respect to notice to known potential claimants, Supplemental Rule G(4)(b)(i) requires the government to "send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant . . . ." Supplemental Rule G(4)(b)(ii) requires that the notice state: "(A) the date when the notice is sent; (B) a deadline for filing a claim, at least 35 days after the notice is sent; (C) that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer." Fed. R. Civ. P. Supp. G(4)(b)(ii). Supplemental Rule G(4)(b)(iii) governs the means that may be used when sending notice to potential claimants. In relevant part, the Rule requires the following:

> (A) The notice must be sent by means reasonably calculated to reach the potential claimant. (B) Notice may be sent to the potential claimant or to the attorney representing the potential claimant with respect to the seizure of the property or in a related investigation, [or] administrative forfeiture proceeding. (C) Notice sent to a potential claimant who is incarcerated must be sent to the place of incarceration.

Fed. R. Civ. P. Supp. G(4)(b)(iii).

The United States served notice on two potential claimants: Daniel Ni and Evelyn Nguyen. *See* Government's Response to Order for Additional Materials and Supplemental Brief, Ex. A ("Public Notice of Forfeiture Action"). The form of notice complies with the requirements of Supplemental Rule G(4)(b)(ii). In particular, the notice: (A) is dated April 19, 2013 and was served on April 22, 2013; (B) states that the deadline for filing a claim is at least 35 days after the notice is sent; (C) states that an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure must be filed within 21 days after filing the claim; and (D) identifies Assistant United States Attorney Kimberly E. Hopkins as the government attorney to be served. In addition, the notices sent to Ni and Nguyen satisfy the requirements of Fed. R. Civ. P. Supp. G(4)(b)(iii) because notice was sent by means reasonably calculated to reach them. As discussed above, the United States served Daniel Ni and Evelyn Nguyen – as well Nguyen's attorney – via both certified and regular U.S. mail, with the Complaint, Arrest Warrant, and Notice of Forfeiture Action at their last known addresses. *See* Dkt. No. 5 (Certificate of Service). Certified mail is a means of service that is expressly permitted under Rule 5(b)(2)(B) of the Federal Rules of Civil

14

Procedure. *See also In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1294 (11th Cir. 2003) (upholding default judgment where defendant failed to respond to the complaint served to his last known address via certified mail). Therefore, the notice sent to Ni and Nguyen satisfies Supplemental Rule G(4)(b)(ii).

The Court further finds that the United States has given notice to all "potential claimants" even though it did not give notice of this action to the victims identified in the complaint. In *United States v. $4,224,958.57*, 392 F.3d 1002, 1005 (9th Cir. 2004) ("*Boylan*"), the Ninth Circuit vacated a default judgment where the government failed to give notice to the victims who were known to the government as potential claimants. *Id.* In that case, however, the claimants had not been afforded an opportunity to regain their property through an administrative proceeding. Here, the USSS has granted the petitions of the victims for the full amount that each victim lost, less only a small amount in administrative costs.[6] Further, although the victims have received only $7,923.90 to date, the United States has stated that it will pay the balance owed on the petitions once this action is resolved. *See* Hopkins Decl., ¶ 8. As the victims have elected to accept the remedy available through the administrative proceeding and will receive almost the entire amount of money that was taken from them, they do not "reasonably appear" to have a potential claim on the currency that is at issue in this action.

### 2. No Timely and Responsive Pleadings

For default to be entered under Admiralty Local Rule 6-2(a), Plaintiff must make a showing that proper notice has been given and that no one has filed timely and responsive pleadings. No identified claimant filed any responsive pleading to assert an interest in Defendant currency. Accordingly, Plaintiff has satisfied the procedural requirements that govern civil

---

[6] According to the Hopkins Declaration, administrative costs as of September 13, 2013 were approximately $238.20. Hopkins Decl., ¶ 8. Further, this amount has already been deducted from the payments that were sent to the victims. Therefore, the remaining amount each victim will receive following resolution of this matter will be $6,957 less any additional administrative expenses incurred in this action after September 13, 2013. To the extent the United States has already fulfilled its obligations to advertise the potential forfeiture, the only additional administrative expenses appear to be "packaging" expenses. Therefore, the Court expects that any additional administrative expenses deducted from the victims' payments will be significantly less than the $238.00 in expenses already incurred.

forfeiture actions and entry of default judgment in such actions.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion. Default judgment is hereby entered for the United States against Defendant Approximately $73,670 in United States Currency, which is forfeited to the United States. All right, title, and interest in said property is vested in the United States of America **subject to the condition that the remainder of the currency due to the victims on their Petitions for Remission shall be promptly remitted to them following entry of judgment in this action.** IT IS FURTHER ORDERED that the United States Marshals Service dispose of the forfeited Defendant property according to law and in a manner that is consistent with this Order. **In addition, the United States shall serve upon the two victims identified in the Complaint (Victim 1 and Victim 2) by United States mail, First Class, a copy of this Order.**

IT IS SO ORDERED.

Dated: October 18, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge